UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

TORREY DWAYNE MATTHEWS, JR.                    CIVIL ACTION

VERSUS                                          NO. 20-2069

TERREBONNE PARISH CRIMINAL                      SECTION "D" (2)
JUSTICE COMPLEX, ET AL

## REPORT AND RECOMMENDATION

Plaintiff Torrey Dwayne Matthews, Jr. is a prisoner incarcerated at the Terrebonne Parish Criminal Justice Complex in Houma, Louisiana. ECF No. 4-1, at 2. He filed this complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983, naming as defendants: Terrebonne Parish Criminal Justice Complex; Medical Administrator Richard Neal; and Sheriff Tim Soignet (incorrectly identified as Tim Soujner and Mike Soujner). ECF No. 4, at 1–2; 4-1, at 1. In his Response to this Court's § 1983 Fact Order, in addition to these  two defendants, Plaintiff alleged that Wardens Rhonda Ledet and S. Bergeron violated his constitutional rights. ECF No. 15, at 2. Briefly, Plaintiff alleges a denial of medical care from 7:00 a.m. to 4:00 p.m. on July 9, 2020. ECF No. 4-1, at 3. This matter was referred to the undersigned magistrate judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); E.D. La. LR 73.2(A).

Defendants Richard Neal and Terrebonne Parish Criminal Justice Complex filed a Rule 12(b)(6) Motion to Dismiss for failure to state a claim, which was set for submission on December 2, 2020. ECF. No. 18. In their motion, Defendants argue that the Terrebonne Parish Criminal Justice Complex is not a "person" under § 1983, Plaintiff fails to state a claim against the Defendant Neal in his official capacity, and plaintiff has not alleged sufficient facts to establish deliberate indifference, and qualified immunity precludes Defendant Neal's liability. ECF No. 18-

1, at 4–9.  As of this date, Plaintiff has not filed an Opposition Memorandum.  The Motion to Dismiss is addressed in this Report and Recommendation.

## I.    **BACKGROUND**

### A.  **Factual Allegations**

Matthews alleges that he was denied medical care on July 9, 2020 from 7:00 a.m. to 4:00 p.m. when he complained that his face was swollen and hurting on one side of his face.  ECF No. 4-1, at 3.  He claims that he notified the pod officer that he was in pain and the left side of his face was swollen and hurting bad at 7:15 a.m.  ECF No. 15, at 2.  The officer told Matthews that he notified medical and "they were [going] to get with" him.  *Id.*  After waiting for hours in pain, he called the pod officer again at 2:03 p.m.  *Id.*  After that second call, Officer Billiott and a nurse arrived to check his blood pressure and at that time, he showed them his face and told the nurse "what was going on."  *Id.*  The nurse said "it was nothing she could do for him," and as she walked away, told him to "wait until pill call" rounds, which was six hours away.  *Id.*

### B.  **Plaintiff's Medical Records**

Matthews's medical records were provided in response to the court's order (ECF No. 9).  During the Spears hearing, Matthews testified that he had been provided with the medical records and did not dispute the authenticity or contents of the records.

A review of Plaintiff's medical records indicate that he first complained about a growing tooth cutting into his cheek and a "tooth with a hole in it" on June 21, 2019.  After submitting a Request for Medical Attention Form, he was examined on June 22, 2019 and prescribed 500 mg of Naproxen, an anti-inflammatory, for 14 days.  He also filled out a Dental Request Form seeking authorization for the dentist to pull the tooth.  The records reflect Matthews received Naproxen (anti-inflammatory) twice a day from June 22–30; however, there is no record of a dental visit, or

any further complaints regarding pain from his tooth for almost one year (i.e., between June 22, 2019 and June 12, 2020).

On June 12, 2020 at 8:00 p.m., Matthews filled out a Request for Medical Attention Form complaining of bad tooth pain and stating that the medication was not working.  That evening, medical staff examined him, diagnosed a broken tooth on his lower left gum, and prescribed 500 mg of Naproxen (an anti-inflammatory) for 14 days.  Plaintiff filled out a Dental Request Form noting that he had a "big hole in a back tooth that hurts bad" and it has been a problem for "9 months."  The form was logged on June 13, 2020, and at 8:00 p.m. on that day, medical staff examined him.  Medical prescribed 300 mg of Linc (an antibiotic) for three days and administered orajel.  At that time, swelling was noted on the left side of Matthews's face.

On June 15, 2020, at 1:32 p.m., Matthews complained to the medical department that the medication was not working to relieve the toothache. During the 8:00 p.m. medication pass, he again complained that the pain medication was not working.  He was advised that it would not be increased and was given orasol gel.  At 10:33 p.m., he again asked for more pain medication and said that he wanted to be taken to Chabert Medical Center. His request was denied. Notes from this interaction state that he had turned in a dental request form in June 2019 but did not turn in a second form provided to him. At 10:35 p.m., Matthews called the pod officer to notify the nurse that he would sue because he was not getting medical attention.

On July 9, 2020, at 2:15 p.m., Matthews complained to a nurse that he had a toothache on the left side of his mouth and it was swollen. At 6:00 p.m., Matthews submitted a Request for Medical Attention Form complaining that "the left side of my face hurt bad from head to jaw and my tooth is killing me the meds ain't working for me." He was examined at 8:00 p.m. and was diagnosed with a "tooth rotten with exposed nerves to the [upper] left side." He was advised that

he could arrange for a private appointment at his own expense in order to get to see the dentist faster.

On July 11, 2020, at 5:00 a.m., Matthews submitted a Request for Medical Attention Form stating, "They took me off meds for my teeth and it's still killing me please help me."  The medical staff examined him during the 8:00 a.m. med pass and prescribed 600 mg of ibuprofen for 14 days. On July 26, 2020, Matthews submitted a Request for Medical Attention Form stating that he needed "to get back on the meds for my teeth."  Medical again prescribed 600 mg of ibuprofen for 14 days.

On July 28, 2020, Matthews submitted a Request for Medical Attention Form complaining of a bump on the bottom left side of his gum and stating that the meds were not working.  He submitted another Request for Medical Attention Form on July 31, 2020, complaining that the bump on the bottom left side of his gum had grown and was hurting his entire head. The examination notes indicate that he is already on medication for his teeth.  Again on August 10, 2020, Matthews submitted a Request for Medical Attention Form asking to get back on meds for his teeth.  The examination notes contain a diagnosis of an "abscess to lower left gumline roughly the size of a pea," for which medical prescribed 500 mg of penicillin for 7 days and 600 mg of ibuprofen for 7 days.

The medication charts reflect that between mid-June and late July, Matthews received anti-inflammatory medication daily and antibiotics for 21 consecutive days.  Between July 29 and August 17, 2020, he received penicillin and anti-inflammatory medication daily.

## C. *Spears* Hearing Testimony

On November 5, 2020, I conducted a telephone conference in this matter.  Participating were plaintiff, *pro se*; and William Dodd, counsel for defendant Sheriff Soignet.  Plaintiff was

4

sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny.

Matthews testified that he named Richard Neal and Tim Soignet as defendants in their official capacities as the Medical Administrator and Sheriff, respectively.  He named Neal because he did not know the name of the nurse who was personally involved in the events described in his complaint, and when he referred to "Peter Neal" in his Complaint, he meant Richard Neal.  He named Sheriff Soignet because "[t]his is his jail."  When he referred to Mike Soujner or Tim Soujner in his Complaint and Fact Response, he meant Sheriff Tim Soignet.  Matthews testified that his Fact Response included Warden Rhonda Ledet and Warden Stephen Bergeron, in their official capacities, for violating his constitutional rights.  ECF No. 15.

Matthews testified that, on July 9, 2020, he woke up with a lump on his gum, a toothache, and swelling and pain on his left side of face, so at 7:15 a..m. he called the pod officer, whose name he cannot recall.  Matthews testified that the pod officer said he called medical.  At 10:00 a.m., a nurse, whose name he cannot recall, stopped by his cell as she was passing out medication to the inmates, and she said she would come back, but she didn't.  Around 2:00 p.m., after he complained to the pod officer again, Nurse Tina and Officer Billiott came to his cell.  He told the nurse that he had been in pain since 7:00 a.m. and that the entire left side of his face hurt and was swollen.  He testified the nurse did not examine him at all, but told him that he would have to wait until the next med call and walked away.

Matthews filled out a medical care request form later that day, and at the 8:00 p.m. medication distribution, he received ibuprofen for pain.  He testified that the pain and the swelling eventually went away, and he is not still requesting medical care for the condition.  He denied having any physical injuries. When asked during the *Spears* hearing why he believes the

defendants should be held liable for damages, Matthews responded that they should have "looked more into it" and that he went 12 hours in pain before receiving any help.

Notably, in his Complaint and during the *Spears* hearing, Matthews complains about the pain he experienced on July 9, 2020 and the delay between the first time he complained and the attention he received after being examined at 8:00 p.m. that evening.  While he does write this incident is "not the first time" in his Fact Response, he does not complain about any delay in medical care from June 2019 to June 2020. He testified that the June 2019 issue with a tooth likely was the same tooth causing him issues on July 9, 2020; however, he had not seen a dentist or had the tooth pulled between July 2019 – July 2020.  Between these dates, he had "filled out papers" to see a dentist for issues with his tooth in 2019 and filled out papers again when he received no response.  As of the *Spears* hearing, Matthews testified that he never received a response to his request to see the dentist regarding issues with his tooth in 2019, and he never saw any dentist between July 2019 and the *Spears* hearing.

Matthews filed a grievance regarding the July 9, 2020 medical delay on that same day.  He received a response that day or the next, but doesn't recall the substance of the response.  He appealed the day he received the response.  He received a response to the appeal the next day but did not pursue any further appeal or grievance process.  Instead, he filed this suit.

## II.    LEGAL STANDARDS

### A.    Statutorily Required Screening

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity. A prisoner's *pro se* complaint must be screened by the court as soon as practicable after docketing pursuant to 28 U.S.C. § 1915A(a).[1]  Further, because Plaintiff is proceeding *in forma pauperis*, his

---

[1] *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998).

complaint is also subject to screening pursuant to 28 U.S.C. § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous[2] or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.[3]  Thus, the law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."[4]

**B.**  **Motion to Dismiss under Rule 12(b)(6)**

The Supreme Court clarified the standard for a Rule 12(b)(6) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is *plausible* on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[5]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[6]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[7]  The court may consider not only the

---

[2] A complaint is frivolous "if it lacks an arguable basis in law or fact."  *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994)).

[3] *Cf. Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994) ("A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended)).

[4] *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

[5] *Bell Atl.*, 550 U.S. at 555, 570.

[6] *Iqbal,* 556 U.S. at 678.

[7] *Ferrer v. Chevron Corp*., 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted); *see also SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Commercial Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 944–45 (5th Cir. 2018) (holding

allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice.[8] When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[9]

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.[10]  A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.[11]  The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."[12]  The court must also "'liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel . . . .'"[13]

## C.  **The *Spears* Hearing**

The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the

---

conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).

[8] *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (stating that a court may rely on the complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

[9] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp*., 355 F.3d 370, 377 (5th Cir. 2004) (citation omitted).

[10] *See Carroll v. Fort James Corp*., 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

[11] *Villarreal v. Wells Fargo Bank, N.A*., 814 F.3d 763, 766 (5th Cir. 2016).

[12] *Pervasive Software Inc. v. Lexware GMBH & Co*., 688 F.3d 214, 232 (5th Cir. 2012).

[13] *Smith v. Lonestar Constr., Inc*., 452 F. App'x 475, 476 (5th Cir. 2011) ; *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

claims.[14]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[15]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).[16]  Of course, the plaintiff is the master of his complaint and, in the end, is the person responsible for articulating the facts that give rise to a cognizable claim.[17]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[18]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.[19]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing . . . ."[20]  Medical records of sick calls, examinations, diagnoses, and medications, however, may rebut an inmate's allegations of deliberate indifference.[21]

After a *Spears* hearing, with its concomitant opportunity to expound the claim, a complaint may be dismissed for failure to state a claim or as legally frivolous if it lacks an arguable basis in law[22] or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . when the facts

---

[14] *Spears v. McCotter*, 766 F.2d 179, 180 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).
[15] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[16] *Wilson v. Barrientos*, 926 F.2d 480, 481–82 (5th Cir. 1991); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).
[17] *Davis*, 157 F.3d at 1006.
[18] *Spears*, 766 F.2d at 182.
[19] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992))
[20] *Id.* (citing *Williams v. Luna*, 909 F.2d 121, 124 (5th Cir. 1990)).
[21] *Gobert v. Caldwell*, 463 F.3d 339, 346 n.24 (5th Cir. 2006) (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).
[22] *Jackson v. Vannoy*, 49 F.3d 175, 176–77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992) (quoting *Nietzke*, 490 U.S. at 330).

alleged rise to the level of the irrational or wholly incredible."[23]  A complaint fails to state a claim

on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to

relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above

the speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."[24]  "'A complaint lacks an arguable basis in law if it is based on an indisputably

meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly

does not exist.'"[25]  "When a complaint raises an arguable question of law which the district court

ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is

appropriate; however, dismissal under the § 1915(d) frivolousness standard is not."[26]

## III.   **LAW AND ANALYSIS**

Section 1983 authorizes lawsuits for monetary damages or injunctive relief against those

acting under the color of state law who violate a citizen's constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any . . . person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983.

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive

individuals of their federally guaranteed rights and to provide relief to victims if such deterrence

fails."[27]  Because § 1983 merely provides a remedy for designated rights, rather than creating any

substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[28]

---

[23] *Moore*, 976 F.2d at 270.

[24] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (citations and footnotes omitted).

[25] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[26] *Moore*, 976 F.2d at 269.

[27] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[28] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

To establish § 1983 liability, a plaintiff must allege:

(1) deprivation of a right secured by the U.S. Constitution or federal law;

(2) that occurred under color of state law; and

(3) was caused by a state actor.[29]

To hold a defendant personally liable under § 1983, plaintiff must establish either that the defendant was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the [defendant] and the alleged constitutional violation."[30]

Matthews's complaint, liberally construed,[31] and as expounded by his *Spears* testimony explaining the factual basis of his claim, must be dismissed with prejudice as to the Terrebonne Parish Criminal Justice Complex because that entity is not a "person" for purposes of § 1983. His claims against Sheriff Soignet, Richard Neal, Rhonda Ledet and Stephen Bergeron should be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2), § 1915A(b), and/or 42 U.S.C. § 1997e(c)(1) on the basis that they were not personally involved in the acts causing the alleged deprivation of constitutional rights. Pursuant to 28 U.S.C. § 1915(e)(2), § 1915A(b), and 42 U.S.C. § 1997e(c)(1), Plaintiff's claims should further be dismissed against all defendants as he fails to establish deliberate indifference on the part of any defendant and thus, fails to establish a cognizable Eighth Amendment claim. Plaintiff's claims should be dismissed under Rule 12(b)(6) against Terrebonne Parish Criminal Justice Complex, as it is not a juridical person, as well as Defendant Neal, as he has qualified immunity and there is no evidence he was personally involved or possessed the necessary deliberate indifference.

---

[29] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[30] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *accord Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008); *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006).
[31] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

A.  **No Liability of Terrebonne Parish Criminal Justice Complex**

Matthews has improperly named the Terrebonne Parish Criminal Justice Complex as a

defendant.  First, the prison lacks the capacity to sue or be sued as required by Fed. R. Civ. P.

17(b).  An entity's capacity to be sued is determined by reference to the law of the state in which

the district court sits.  Fed. R. Civ. P. 17(b)(1).  To possess capacity under Louisiana law, an

entity must qualify as a "juridical person," which is defined as ". . . an entity to which the law

attributes personality, such as a corporation or partnership."  La. Civ. Code art. 24.  Louisiana,

however, divides the responsibility for its parish jails.  The parish is charged with its jails'

physical maintenance, pursuant to La. Rev. Stat. § 15:702, and the sheriff of each parish has the

duty to administer and operate the jails.  La. Rev. Stat. § 15:704.  The office of the sheriff is a

constitutionally created office in Louisiana, existing separately from the parish government.[32]

Thus, in Louisiana, jail facilities are not "legally empowered to do" anything independently of

either the respective parish officials or the parish sheriff.[33]

In  addition,  § 1983  imposes  liability  on  any  "person"  who  violates  someone's

constitutional rights under color of law.[34]  Under federal law, a county or parish prison facility

simply is not recognized as a "person" within the meaning of the statute.[35]  In Louisiana, "a prison

or jail or its administrative departments are not entities that can be sued under Section 1983 because

---

[32] La. Const. art. 5 § 27; *see Langley v. City of Monroe*, 22-483 (La. App. 2d 6/19/91), 582 So. 2d 367, 368 (holding that the parish police jury, or government, could not be liable for injuries attributed to the sheriff).

[33] *See Roberts v. Sewerage & Water Bd.*, 92-2048 (La. 03/21/94), 634 So. 2d 341, 347.

[34] 42 U.S.C. § 1983; *see generally Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989) (holding that state officials are not "persons" acting in their official capacities under § 1983).

[35] *Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. 2008) (adopting report and recommendation) (citing *United States ex rel. Arzonica v. Scheipe*, 474 F.2d 720, 721 (3d Cir. 1973)); *Cullen v. DuPage Cty.*, No. 99-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 13, 1999); *Whitley v. Westchester Cty. Corr. Facility Admin.*, No. 97-0420, 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook Cty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw Cty. Prosecutor's Office*, 548 F. Supp. 1255, 1256 (E.D. Mich. 1982).

they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term."[36]

For these reasons, Matthews's claims against the Terrebonne Parish Criminal Justice Complex must be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2), § 1915A(b); 42 U.S.C. § 1997e(c)(1).

**B. No Liability of Sheriff Tim Soignet, Medical Administrator Richard Neal, Warden Rhonda Ledet, or Warden Stephen Bergeron in their Official Capacities**

Matthews named Sheriff Soignet and Richard Neal as defendants in this case. Matthews testified during the November 5, 2020 *Spears* hearing that neither of these defendants was personally involved in any of the alleged acts or omissions upon which his claims are based. He named Richard Neal because he is the medical administrator and Matthews could not remember the name of the nurse who addressed his complaints in person.  Matthews testified that he named Sheriff Soignet because "it's his jail."  In his *Spears* hearing, Matthew testified that he only named these defendants because of their official positions.

Broadly construed, Matthews's complaint and *Spears* testimony seek to hold Sheriff Soignet and Medical Administrator Richard Neal vicariously liable for the actions of individual actors at the prison who allegedly failed to provide Matthews with prompt and proper medical attention in the face of his complaints.  "There is no respondeat superior liability under section 1983."[37]  Sheriff Soignet and  Richard Neal cannot be held liable under § 1983 pursuant to a theory

---

[36] *Douglas*, 567 F. Supp. 2d at 892; *Jones v. St. Tammany Parish Jail*, 4 F. Supp. 2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Parish Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, at *4 (E.D. La. Aug, 10, 2015).

[37] *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996); *accord Field v. Corr. Corp. Inc.*, 364 F. App'x 927, 929 (5th Cir. 2010); *Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008) (quoting citation omitted); ;  *Kohler v. Englade*, 470 F.3d 1104, 1114 (5th Cir. 2006).

of respondeat superior simply because the persons allegedly responsible for plaintiff's injuries were in their employ or under their supervision.[38]

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.[39]  Neither his pleadings nor his testimony alludes to any alleged "policy" adopted or implemented by these defendants.  As Matthews has alleged no policy for which Sheriff Soignet or Richard Neal can be held constitutionally liable, he fails to state a claim for relief against Sheriff Soignet and Richard Neal under § 1983.[40]

In his Fact Response, Plaintiff asserts that Warden Rhonda Ledet and Warden Stephen Bergeron also violated his constitutional rights, though he did not name them as defendants.  ECF No. 15.  At his *Spears* hearing, Matthews stated that he named them in their official capacities. Like Sheriff Soignet and Richard Neal, Matthews did not allege that Warden Ledet or Bergeron had any personal role or involvement in the alleged denial of medical care, and he offered no facts from which it could be found that they acted in their individual capacity or pursuant to an unconstitutional policy.

Accordingly, for the foregoing reasons, Matthews's claims against Tim Soignet, Richard Neal, Rhonda Ledet and Stephen Bergeron should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(e)(2), § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

[38] *Sanders v. English*, 950 F.2d 1152, 1160 (5th Cir. 1992); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983).
[39] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691–95 (1978); *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009) (citing *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1993)); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).
[40] *Monell*, 436 U.S. at 691–95; *Thompson*, 348 F. App'x at 921–22; *Mouille*, 977 F.2d at 929.

**C.** <u>**No Eighth Amendment Claim for Inadequate Medical Care**</u>

Matthews alleges that an unnamed nurse (possibly Ms. Tina) at the Terrebonne Parish Criminal Justice Complex violated his constitutional rights by failing to respond to his complaints of pain more expeditiously and failing to have a dentist examine his tooth. The United States Supreme Court has addressed the question of alleged inadequate medical care in jails under the Eighth Amendment.[41]  A prison official violates the Eighth Amendment when he shows deliberate indifference to a prisoner's serious medical needs, which equates to the "unnecessary and wanton infliction of pain."[42]  To show a violation of the Eighth Amendment, the plaintiff must prove: (1) "objective exposure to a substantial risk of serious harm"; and (2) "that prison officials acted or failed to act with deliberate indifference to that risk."[43]  To establish deliberate indifference, an inmate must show "that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[44]  A "serious medical need" is "one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."[45]  As to the objective exposure to a substantial risk of harm, a delay in medical treatment that results in substantial harm can constitute the necessary deliberate indifference for an Eighth Amendment violation.[46]  Likewise, severe pain experienced by an

---

[41] *See Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994).

[42] *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

[43] *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006).

[44] *Tustin v. Livingston*, 766 F. App'x 174, 177 (5th Cir. 2019) (citing *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001))); *see also Farmer*, 511 U.S. 825 at 837 ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.") .

[45] *Gobert*, 463 F.3d at 345 n.12.

[46] *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

inmate during a delay in dental treatment *may* represent the "substantial harm" required to recover under the Eighth Amendment.[47]

A review of Plaintiff's medical records[48] suggests that Matthews first complained about a toothache on or about June 21, 2019, at which time he was prescribed anti-inflammatory medication and placed on the dental appointment wait list. There is no indication that Matthews saw a dentist in 2019. When asked about the June 2019 dental issue during the *Spears* hearing, Plaintiff stated that it involved the same tooth that caused him pain in the summer of 2020. The medical records do not reflect any complaints about tooth pain until almost a year later, though Plaintiff testified that he did fill out papers in 2019 to see a dentist but the nurse must have lost them because he never went to the dentist.

On June 12, 2020, when Matthews complained of swelling and a toothache caused by a "big hole in back left tooth" that had been in the tooth for "9 months." Matthews did not testify that he was in pain the entire nine months. Rather, he said that the problem recurred in mid-June 2020 when he began having pain again. At that time, Matthews again received anti-inflammatory medication and orajel for the pain and swelling, as well as antibiotics for a bacterial infection. He remained on various forms and dosages of anti-inflammatory and antibiotic medication for the next eight weeks. Matthews testified that the swelling went away and the pain subsided. Thus, Matthews does not suggest that he failed to receive treatment for pain and swelling generally and confirmed that he received anti-inflammatories and antibiotics. Rather, he complains only about the delay on July 9, 2020 when he was in significant pain for a day.

---

[47] *Eugene v. Deville*, 791 F. App'x 484, 485–86 (5th Cir. 2020) (citing *Easter*, 467 F.3d at 464–65.)

[48] The court may rely on medical records in assessing a claim of deliberate indifference. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

Matthews claims that he should have been taken to the dentist for examination on July 9, 2020. The evidence in this case reflects that, while Matthews did not see a dentist on July 9, 2020, he did receive some treatment. Again, Matthews complained of pain at approximately 7:15 a.m., spoke with a nurse during 10:00 a.m. rounds who said she would come back but failed to return, complained again at approximately 2:00 p.m., and was examined by a nurse with officer Billiot shortly thereafter, and received pain medication later that evening.

A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.[49] Deliberate indifference is an extremely high standard to meet.[50] In a similar case decided by a sister district court in Louisiana, a prisoner claimed that his constitutional rights were violated when he complained about a "hole in his gums" causing him "severe pain" in October 2008 and for which he did not receive relief from his pain until four months later, in February 2009.[51] The court found that the four-month delay did not state a claim under the Eighth Amendment because it represented, at most, negligent medical treatment, which is not a cognizable basis for a § 1983 claim.[52] In another case, it took more than nine months for an inmate to obtain relief from an abscessed tooth, and even after receiving various forms of ongoing treatment, he complained of discomfort.[53] The court held that the inmate's dissatisfaction with the treatment he received over the course of nine months did not state a claim for relief because he could not show

---

[49] *Tustin*, 766 F. App'x at 177.
[50] *Gobert v. Caldwell*, 463 F.3d at 346 (citation omitted).
[51] *Ledee v. Otwell*, No. 09-744, 2010 WL 1142051, at *2–3 (W.D. La. Jan. 27, 2010), *adopted by*, 2010 WL 1142050 (W.D. La. Mar. 24, 2010).
[52] *Id.* at *6–7.
[53] *Bailey v. E. Baton Rouge Par. Prison*, No. 12-0224, 2014 WL 1404574, at *2 (M.D. La. Apr. 10, 2014).

"subjective recklessness," i.e. that defendant warden was "personally aware of the plaintiff's alleged need for treatment and the alleged delays in providing same".[54]

While the Fifth Circuit has recognized that severe pain experienced by an inmate during a delay in dental treatment *may* represent the "substantial harm" required to recover under the Eighth Amendment,[55] it did so in the context of a ten-month delay during which time an inmate's ongoing complaints of extreme pain appeared to have been completely ignored, i.e., he received no treatment at all.  On this record, the Court does not find the level of deliberate indifference required by the Eighth Amendment.  Accordingly, Matthews's claim based on inadequate dental care should be dismissed as frivolous and/or for failure to state a claim for relief.[56]

### D.  The PLRA Requires More Than De Minimis Physical Injury

Even if Plaintiff could state a constitutional violation, he would not be entitled to recover compensatory damages.  The Prison Litigation Reform Act, 42 U.S.C. § 1997e, specifically provides that prisoners are barred from recovering compensatory damages for mental or emotional injuries "unless there is a prior showing of physical injury . . . ."[57]  The "physical injury" required by § 1997e(e) must be more than *de minimis* but need not be significant.[58]

It is the nature of the relief sought, not the underlying substantive violation, that controls:[59]

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Thus, the seriousness of the

---

[54] *Id.* at *5–7 ("'[S]ubjective recklessness as used in the criminal law' is the appropriate definition of 'deliberate indifference.'") (citations omitted).

[55] *Eugene v. Deville*, 791 F. App'x 484, 485–86 (5th Cir. 2020) (citing *Easter v. Powell*, 467 F.3d 459, 464-65 (5th Cir. 2006)).

[56] 28 U.S.C. §1915(e)(2)(B)(ii); 28 U.S.C. §1915A(b)(1); 42 U.S.C. § 1997e(c)(1).

[57] 42 U.S.C. § 1997e(e); *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997); *Crawford-el v. Britton*, 523 U.S. 574, 596 (1998).

[58] *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Siglar*, 112 F.3d at 193).

[59] *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).

injury needed to rise about [sic] de minimis, would . . . require more than the types and kinds of bruises and abrasions about which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).[60]

A plaintiff is not entitled to compensatory damages without the required physical injury.[61] Temporary pain is insufficient to satisfy this requirement.[62]

The temporary pain identified by Plaintiff is not alleged to have caused any physical injury, and the short period of delay would at best establish *de minimis* injury.  Accordingly, the allegations fall short of the physical injury required to recover on a § 1983 claim under the parameters of § 1997e(e).  Thus, it does not survive review under 28 U.S.C. § 1915(e)(2), 1915A(b), and 42 U.S.C. § 1997e(c)(1), nor the Rule 12(b)(6) Motion to Dismiss (ECF No. 18).

### E.  Qualified Immunity Applies Absent a Violation of a Clearly Established Right

In the Motion to Dismiss, Defendant Richard Neal also seeks dismissal, in the alternative, based on qualified immunity.  ECF No. 18-1, at 8–9.

The doctrine of qualified immunity shields a defendant from personal liability unless the rights allegedly violated were "clearly established" at the time of the violation.[63]  "For a constitutional right to be clearly established, its contours must be sufficiently clear that a

---

[60] *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).

[61] *See Siglar*, 112 F.3d at 193 (applying § 1997e(e)'s physical injury requirement to Eighth Amendment claims and holding that the statutory physical injury requirement is coextensive with Eighth Amendment's physical injury test; ruling that a sore and bruised ear lasting three days de minimis injury); *Alexander v. Tippah Cty.*, 351 F.3d 626, 627–31 (5th Cir. 2003) (holding that vomiting and nausea from exposure to build up of feces and urine in backed-up drain pipe they were forced to use was no more than a de minimis physical injury); *Herman v. Holiday*, 238 F.3d 660, 665–66 (5th Cir. 2001) (finding fear of contracting future illness from mosquito infested facility, insufficient hot water, cold food, unsanitary eating utensils, cesspool near residential entrance and failure to provide loaner clothes on laundry day cannot transform prisoner's claim for mental and emotional damages into an independent category of damages to avoid bar of § 1997e(e)'s requirement for physical injury); *Harper*, 174 F.3d at 719 (applying § 1997e(e)'s physical injury requirement to bar psychological damages absent allegation of more than de minimis physical injury in § 1983 claim alleging Eighth Amendment violation).

[62] *Sublet v. Million*, 451 F. App'x 458, 459 (5th Cir. 2011) (stating temporary pain stemming from numbness and tenderness in left hand and arm insufficient to establish more than *de minimis* injury).

[63] *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted); *see also Lott v. Edenfield*, 542 F. App'x 311, 314–15 (5th Cir. 2013). *Mullenix v. Luna*, 577  U.S. 7, 12 (2015) (per curiam) (citation omitted) ("The dispositive question is 'whether the violative nature of particular conduct is clearly established.'").

reasonable official would understand that what he is doing violates that right."[64]  The contours are sufficiently clear if "[t]he unlawfulness of the defendant's actions [was] readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact act have been [declared] illegal."[65]  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[66]  The "salient question," therefore, is whether the defendants had "fair warning" that their specific actions were unconstitutional.[67]

Even when the "law is not clearly established" such that the exact conditions have previously been found unconstitutional, a court may find official(s) had "fair warning" if the circumstances are so extreme that no reasonable officer could have concluded the conditions were constitutionally permissible.  *See Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (finding that the conditions of confinement at issue – consecutive six days first in a cell covered floor to wall in feces that forced the prisoner to not eat or drink for four days and later in a frigid cell with a clogged drain that forced the prisoner to hold his bladder for over 24 hours until he involuntarily relieved himself, causing the drain to overflow and resulting in him sleeping naked in sewage - were so extreme that no reasonable officer could have found these circumstances constitutionally permissible).

In the absence of an alleged violation of a "clearly established right" or the type of extreme circumstances as those at issue in *Taylor v. Riojas*, qualified immunity will protect the defendants

---

[64] *Id.* (quoting *Hope*, 536 U.S. at 739).
[65] *Taylor v. McDonald*, 978  F.3d 209, 212(5th Cir. 2020) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (finding that because it is not clearly established that an inmate has a liberty interest in being transferred out of a psychiatric unit after withdrawing consent and not receiving psychiatric treatment, officials had qualified immunity).
[66] *Ashcroft v.* al-*Kidd*, 563 U.S. 731. 741 (2011).
[67] *Hope*, 536 U.S. at 741; *see also Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018) ("The central concern is whether the official has fair warning that his conduct violates a constitutional right.").

from liability.[68]   In short, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."[69]

Plaintiff has failed to put forth specific, non-conclusory allegations[70] that Defendant Neal had any role in, or even notice of, his reports of pain on July 9, 2020, much less evidence of a clearly established right or particularly egregious circumstances, as in *Taylor v. Riojas*, to overcome Defendant Neal's qualified immunity defense.[71]

## RECOMMENDATION

For the foregoing reasons,

IT IS RECOMMENDED that Matthews's claims against the Terrebonne Parish Criminal Justice Complex are dismissed as legally frivolous under 28 U.S.C. § 1915(e)(2), § 1915A(b), and 42 U.S.C. § 1997e(c)(1) and/or for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) because the Terrebonne Parish Criminal Justice Complex is not a juridical entity under state law capable of being sued and/or is not a "person" for purposes of suit under § 1983;

IT IS FURTHER RECOMMENDED that Matthews's claims against Sheriff Tim Soignet, Medical Administrator Richard Neal, Warden Rhonda Ledet and Warden Stephen Bergeron be dismissed as legally frivolous under 28 U.S.C. § 1915(e)(2), § 1915A(b), and 42 U.S.C. § 1997e(c)(1) and/or for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) because Matthews has not alleged that these defendants were personally involved

---

[68] *See, e.g., Taylor*, at 214. .

[69] *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotations and citation omitted).

[70] *Crawford-El v. Britton*, 523 U.S. 574, 598 (1988).

[71] *Cf. Taylor v. Riojas*, 946 F.3d 211, 222, *vacated by Taylor v. Riojas*, 141 S.Ct. 52, 53(2020) (overturning the lower court on the issue of qualified immunity and holding that, when confronted with the particularly egregious facts of this case, "no reasonable correctional officer could have concluded that, under the extreme circumstances of this case, it was constitutionally permissible to house [plaintiff] in such deplorably unsanitary conditions for such an extended period of time.").

in the underlying events, cannot be held liable under the doctrine of respondeat superior, nor are these defendants alleged to have adopted or implemented an unconstitutional policy;

IT IS FURTHER RECOMMENDED that Matthews's claim for inadequate dental care be dismissed as legally frivolous under 28 U.S.C. § 1915(e)(2), § 1915A(b), and 42 U.S.C. § 1997e(c)(1) and/or for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) because he has not alleged facts showing that any defendant acted with deliberate indifference toward his condition, that any delay in treatment resulted in substantial harm, or that he suffered any physical injury.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss claims against Terrebonne Parish Criminal Justice Complex and Richard Neal (ECF No. 18) be GRANTED for reasons stated herein.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[72]

New Orleans, Louisiana, this ___11th___ day of February, 2021.


_____
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[72] 28 U.S.C. § 636(b)(1).